UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:  
JOHNNY B. RANERO  
DORA H. RANERO  

Debtors.
_____/

Case No. 13-34339-RAM  
Chapter 13

## SPACE COAST CREDIT UNION'S OPPOSITION RESPONSE TO DEBTORS' OBJECTION TO NOTICE OF MORTGAGE PAYMENT CHANGE FILED ON FEBRUARY 6, 2015

Secured Creditor, SPACE COAST CREDIT UNION (hereinafter "**Space Coast**"), as successor in interest by merger to Eastern Financial Florida Credit Union and servicer Federal Home Loan Bank of Atlanta, by and through undersigned counsel, hereby files its response in opposition to Debtors' Objection to Notice of Mortgage Payment Change filed on February 6, 2015 by Space Coast Credit Union [D.E. 72], and in support thereof states:

### BACKGROUND

1. On October 9, 2013 ("**Petition Date**"), the Debtors, JOHNNY B. RANERO and DORA H. RANERO ("**Debtors**"), filed a voluntary petition for relief under Chapter 13, Title 11 of the United States Bankruptcy Code.

2. Space Coast is the holder of a Promissory Note and Mortgage (collectively, "**Loan Documents**") in real property owned by the Debtors, located at 20541 SW 125th Avenue, Miami, FL 33177 (the "**Property**").

3. On October 22, 2013, Space Coast timely filed its Proof of Claim in the total secured amount of $256,879.55 with a pre-petition arrearage of $76,273.80 [Claim No. 2-1], as amended [Claim No. 2-4].

4.  As of the Petition Date, the Debtors' escrow account had a <u>negative balance</u> of **$14,259.24**, as set forth in Attachment "A" to Space Coast's Proof of Claim [Claim No. 2-4].[1]

5.  On February 14, 2014, Space Coast filed its Amended Notice of Mortgage Payment Change for the 2014/2015 tax year ("**2014/15 NMPC**") which detailed the Debtors' new post-petition regular mortgage payment effective March 1, 2014, inclusive of escrow (**$2,213.34**). A true copy of the 2014/15 NMPC is attached hereto as **Exhibit "A."**

6.  On April 16, 2014, after overcoming several objections asserted by Space Coast, the Debtors' Second Amended Chapter 13 Plan ("**Plan**") [D.E. 60] was confirmed by the Court [D.E. 65].

7.  The Plan provides for the reinstatement and repayment of Space Coast's Mortgage through the Plan over sixty (60) months, and correctly sets forth the regular monthly mortgage payment in accordance with the 2014/15 NMPC—$2,213.34 beginning in month 5 of the Plan.

8.  On February 6, 2015, Space Coast filed its Notice of Mortgage Payment Change for the 2015/2016 tax year ("**2015/16 NMPC**") which detailed the Debtors' new post-petition regular monthly mortgage payment effective March 1, 2015, inclusive of escrow (**$1,620.72**). A true copy of the 2014/15 NMPC is attached hereto as **Exhibit "B."**

9.  On August 7, 2015, the Debtors filed an Objection to Notice of Mortgage Payment Change filed on February 6, 2015 by Space Coast (the "**Objection**") [D.E. 72], seeking amendment of Space Coast's previous NMPCs to "reflect cancellation" of Space Coast's force-placed lender policy and "adoption" of Debtors' insurance (*see* Obj. ¶ 19).

---

[1] The actual negative escrow balance subsequently increased post-petition to $15,827.68 upon Space Coast's payment of the 2013 real estate taxes in November 2013 (*see* Claim No. 2-4, p. 5-6).

**ARGUMENT**

10. Between the Petition Date and March 29, 2014,[2] Space Coast was force-placing its own lender-based homeowners' insurance on the Property. In order to cancel and replace the force-placed lender's policy, Space Coast required the Debtors to obtain and pay for a new policy for the 2014/15 tax year. The following tax year, Space Coast would pay the annual premium due under the policy with the escrow amounts paid post-petition as part of the regular monthly mortgage payment (**$2,213.34**).

11. 11 U.S.C. § 1322(b)(2) and (5) permit debtors in bankruptcy to deaccelerate and reinstate delinquent mortgage accounts, cure arrearages and maintain the regular monthly mortgage payments over 36- to 60-months through a Chapter 13 plan.

12. Escrow analyses are a projection of what the escrow expenses will be the following tax year (e.g., real estate taxes and insurance). They are prospective in nature and calculated using historical or prior year figures which may fluctuate year to year. To accommodate these fluctuates, under the Real Estate Settlement Procedures Act (RESPA),[3] lenders are permitted to retain a "cushion" calculated at 1/6 the total disbursements from the escrow account to cover any potential increase in the escrow expenses the following year. *See* 12 C.F.R. § 1024.17(c)(5). In instances of a decrease in escrow expenses, there may be a "surplus" at the end of the current tax year. Where a mortgage loan is current and performing, any "surplus" in the escrow account at the end of the tax year may be remitted back to the borrowers or retained as a "cushion" for the following year, except in some circumstances where there was

---

[2] Debtors' homeowners' insurance policy became effective March 24, 2014, thereby causing the subsequent cancellation of Space Coast's force-placed lender policy with Citizens Insurance.
[3] 12 C.F.R. § 1024, *et seq.*

3

a "deficiency" or "shortage" from the previous year.[4]  The collection, allocation and disbursement of escrow is determined by the terms of the individual note and mortgage.

13. In bankruptcy cases, mortgage arrears are frequently paid over the life of the plan—not in lump sum in the beginning—and therefore, negative escrow accounts are often not entirely "replenished" or brought positive until the middle or end of the plan.

14. When lenders perform annual escrow analyses for mortgage accounts being paid within a bankruptcy plan, lenders must consider or "credit" the negative escrow account with those escrow sums included as part of the arrearage paid through the plan.  Otherwise, debtors would be double penalized for the negative "starting balance"—the sums of which are actually being paid in installments over 36- to 60-months in the plan.

15. Thus, when a mortgage is being "cured and maintained" through bankruptcy pursuant to Section 1322(b)(5), it is impossible to determine when a "surplus" really exists until the plan is complete and the mortgage is totally brought current (including the escrow account).

16. For smaller institutions such as credit unions, this complicated escrow calculation is not done automatically in the system, but requires an escrow analysis to be performed manually by both an internal specialist and attorney which is time-consuming and costly.

17. Here, Debtors obtained their own insurance <u>after</u> Space Coast had already performed its manual annual escrow analyses for the 2014/15 tax year.  Undersigned repeatedly told Debtors' counsel that Debtors needed to obtain their own policy prior to February 2014 to no avail.  Debtors had over five (5) months after the Petition Date to comply with their duties as

---

[4] An escrow "shortage" occurs when there is a positive balance in the escrow account but less than the projected balance, which covers any payments mad from the escrow account over the next 12 months. RESPA defines "shortage as "an amount by which a current escrow account balance falls short of the target balance at the time of escrow analysis." 12 C.F.R. § 1024.17.  An escrow "deficiency" is defined as "the amount of a negative balance in an escrow account." 12 C.F.R. § 1024.17.

4

a debtor under the Bankruptcy Code and obtain adequate insurance, which they failed to timely do prior to Space Coast's annual analysis of their account.

18. The Plan was confirmed with the correct numbers and now, over a year later, the Debtors complain that the figures set forth therein are unfair or inequitable.

19. As the Debtors have been willfully paying less than the required post-petition sums due pursuant to the confirmed Plan (*see* Trustee's Notice of Deficiency, D.E. 63], the 2015/16 NMPC filed by Space Coast is very likely incorrect as the calculations therein are based on the amounts paid through the Plan.

20. In the instant case, there was no modification or reamortization of the mortgage which would require Space Coast to readjust the escrow figures or re-analyze the escrow account after an annual escrow analysis has already been completed. Escrow analyses are typically only performed once a year in accordance with RESPA guidelines. *See* 12 C.F.R. § 1024.17 ("For each escrow account, a servicer shall submit an annual escrow account statement to the borrower within 30 days of the completion of the escrow account computation year.")

21. Based on the forgoing, Space Coast respectfully requests the Court overrule the Debtors' Objection to Space Coast's NMPCs and require the Debtors to comply with the Trustee's Notice of Deficiency [D.E. 63].

22. Space Coast expressly reserves the right to amend or supplement this Response any time prior to or at hearing.

**WHEREFORE**, for the reasons more particularly stated herein, Space Coast Credit Union respectfully requests the Court enter an Order overruling the Debtors' Objection [D.E. 72]; and for such other and further relief as the Court deems just and proper.

Dated: October 8, 2015

**BLAXBERG, GRAYSON & KUKOFF P.A.**
*Attorneys for Space Coast Credit Union*
25 SE Second Avenue, Suite 730
Miami, Florida 33131
Phone: (305) 381-7979 x 317
Fax:    (305) 371-6816
alexis.read@blaxgray.com

By: __/s/ *Alexis S. Read*__
     Alexis S. Read, Esq.
     Fla. Bar No. 98084

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 8, 2015, a true and correct copy of the foregoing was served via CM/ECF electronic transmission to those parties who are currently on the list to receive e-mail notice and service for this case, and by U.S. Mail to the following: Robert Sanchez, Esq., *Counsel for Debtors,* 355 W 49 St., Hialeah, FL 33012, court@bankruptcyclinic.com; and Nancy K. Neidich, *Chapter 13 Trustee,* P.O. Box 279806, Miramar, FL 33027, e2c8f01@ch13herkert.com.

By: ___/s/ Alexis S. Read_____
      Alexis S. Read, Esq.
      Fla. Bar No. 98084